IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

STATE OF WEST VIRGINIA, ex rel.
DARRELL V. MCGRAW, JR.,
Attorney General,

                Plaintiffs,

v.                                                  CIVIL ACTION NO. 3:10-0211

CAPITAL ONE BANK (USA) N.A.;
CAPITAL ONE SERVICES, LLC, a Delaware corporation;
CAPITAL ONE SERVICES II, LLC, a Delaware corporation;
CAPITAL ONE SERVICES III, LLC, a Delaware corporation;
and COSI RECEIVABLES MANAGEMENT, INC., a Delaware corporation,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending are Defendants' motions to dismiss (Doc. 8) to transfer venue (Doc. 11) and to submit supplemental authority (Doc. 25). Also pending is Plaintiff's motion for remand (Doc. 18). For reasons apparent, the Court **GRANTS** the motion to submit supplemental authority, but, nonetheless, also **GRANTS** Plaintiff's motion for remand. The Court hereby **DIRECTS** the Clerk to **STRIKE** this case from the docket and **REMAND** it to the Mason County Circuit Court where it was originally filed. Consequently, the Defendants' motions to dismiss and transfer venue are **DENIED** as moot.

**Background**

The Attorney General for the State of West Virginia filed the current action in Mason County Circuit Court on January 20, 2010. The Complaint generally alleges that Defendants (Capital One Bank, USA N.A. and a number of its subsidiaries) engaged in credit card practices that are illegal under the West Virginia Consumer Credit and Protection Act (WVCCPA). Specifically, the Complaint lists seven "Counts" or categories of illegal acts. On March 2, 2010, Defendants removed the case to this Court arguing that two of the Counts – Count III and Count VII – are preempted by §§ 85 and 86 of the National Bank Act.

Count III is styled "Unconscionable Imposition of Over-the-Limit Fees." In this count, the W. Va. Attorney General challenges certain of Defendants' practices that caused consumers to exceed their credit limit and incur over-the-limit fees. Specifically, Plaintiff alleges that Defendants billed and attempted to collect over-the-limit fees when it was Capital One's monthly finance charge or sales of Capital One's own goods or services which caused the consumer to exceed his or her limit. Plaintiff further alleges that Capital One had no procedure to stop soliciting goods and services when a cardholder was in excess of his or her limit and that Capital One failed to decline charges made to a consumer's account even when that account was over the limit. According to the Complaint, this conduct violated the following provisions of the WVCCPA: 1) unfair or deceptive acts or practices under W. Va. Code § 46A-6-104; 2) omitting material information as defined in W. Va. Code § 46A-6-102(7)(N) and in violation of § 46A-6-104; 3) enforcing unconscionable terms or provisions of consumer loans within the meaning of W. Va. Code § 46A-7-109(1)(a); 4) fraudulent or unconscionable conduct in inducing consumers to enter into consumer loans within

the meaning of W. Va. Code § 46A-7-109(1)(b); and, finally, 5) "the making or collecting of charges in excess of those permitted by the [WVCCPA]" in violation of W. Va. Code § 46A-7-111.

Count VII, styled "Making and Enforcing Unconscionable Terms of Provisions of [] Consumer Loans," concerns practices related to low-limit ($200 to $300) credit cards. The W. Va. Attorney General alleges that membership fees (of $39 per year, $59 per year, or $6 per month) along with fees for other services (e.g. $59.95 per year or "Privacy Guard" or $49.95 per year for "National Card Registry") were billed on the cardholder's second monthly statement. As a result, many consumers had substantially less than $200 to $300 of credit available on their cards and some would actually be over their limits as a result of fees and services at the time the card was issued. Once a cardholder was over their limit, Capital One would add a monthly over-the-limit fee (of $25 to $29) each month. Capital One also applied a late fee (of $25 to $29) for these cards and would charge an over-the-limit fee, even if an exceedance of the limit was due to the late fee. According to the allegations, Defendants would issue more than one low-limit card (with credit of $200-$300) rather than increasing the limit on a single card. In this way a consumer would be subject to more than one set of fees. Plaintiff alleges that none of the late fees or over-the-limit fees were disclosed in Capital One promotional materials. One paragraph in this section of the Complaint – paragraph 75 – alleges that "[t]he fees Capitol One billed to consumers for making late payments, making payments less than the minimum monthly payment, or going over-the-limit with the creditor's approval are unrelated to the actual costs of these events and are billed as a means to increase profits." Pl.'s Compl. at 13. Plaintiff alleges that these practices violate many of the same provisions of the WVCCPA as did those in Count III, including: 1 ) unfair or deceptive acts or practices under W. Va. Code § 46A-6-104; 2) enforcing unconscionable terms or provisions of

consumer loans within the meaning of W. Va. Code § 46A-7-109(1)(a); 3) fraudulent or unconscionable conduct in inducing consumers to enter into consumer loans within the meaning of W. Va. Code § 46A-7-109(1)(b); and also, 4) "the making or collecting of charges in excess of those permitted by the [WVCCPA]" in violation of W. Va. Code § 46A-7-111.

## Analysis

Defendants removed this case, arguing that Counts III and VII of Plaintiff's Complaint are preempted by §§ 85 and 86 of the National Bank Act (NBA). Section 85 provides, "[a]ny association may take, receive, reserve, and charge on any loan . . . or other evidence of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located." 12 U.S.C. § 85. Section 86 provides a remedy for an entity who is charged "a rate of interest greater than is allowed by section 85." 12 U.S.C. § 86. Defendant's argue that Counts III and VII of the Complaint are direct challenges to the rate of interest charged, and as such are preempted.

A civil action may be removed from state court to federal court if the claim alleged is one "arising under" federal law. 28 U.S.C. § 1441(b). "[A] suit arises under the Constitution and laws of the United States [i.e. federal law] only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial National Bank v. Andrews*, 539 U.S. 1, 6 (2003) ("*Beneficial*"). As a result, courts typically only examine "well

pleaded" allegations and ignore potential defenses. *Id.* Certain exceptions to this "well pleaded" complaint rule do exist. For example, "[w]hen the federal statue completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.* at 8. Such as case will be removable under 28 U.S.C. § 1441(b).

In *Smiley v. Citibank (S.D.) N.A.* 517 U.S. 735 (1996) the U.S. Supreme Court concluded that the term "interest" as used within §§ 85 and 86 of the NBA encompassed not only traditional interest but also such fees as late fees and over-the-limit fees. 517 U.S. at 740-47. A few years later, in *Beneficial,* it held that these sections preempted certain state claims: "Because § 85 and 86 provide the exclusive cause of action for such claims, there is . . no such thing as a state-law claim of usury against a national bank." 539 U.S. at 11. Based on *Smiley* and *Beneficial*, Defendants argue that Plaintiff's claims are completely preempted by federal law, and thus, that removal is proper.

The State of West Virginia contends that Defendants misread its Complaint. Plaintiff argues that it does not challenge the rate, or amount, of "interest" but rather the practices, procedures and methods which were used to deceive creditors and cause them to incur "interest." They urge that their claims are not the type of state law usury claims held to be removable by *Beneficial*. Rather, they are state-based consumer protection claims, which do not touch on the NBA and are not subject to federal jurisdiction or removal.

The sole question for this Court is how best to characterize Plaintiff's claims. If indeed, these claims are challenges to the rate of interest, then they are clearly preempted by the NBA and removable based on the Supreme Court's holding in *Beneficial. See e.g. Phipps v. FDIC*, 417 F.3d

-5-

1006 (8th Cir. 2005) (holding that challenges to mortgage loan "fees" were challenges to rates of "interest"); *Budnik v. Bank of America Mortgage*, 2003 WL 22964372 (N.D. Ill. Dec. 16, 2003) (finding that despite artful pleading, the plaintiffs' complaint asserted a state law usury claim which was pre-empted by the NBA); *Taylor v. Wells Fargo Home Mortgage*, *Inc.* 2004 WL 856673, at *4 (E.D. La. April 20, 2004) ("The Taylors' purported state law claim that the "Defendants" arbitrarily assessed 'excessive fees and charges,' including late charges to the Taylors when they redeemed their loan is preempted by federal law); *Forness v. Cross-Country Bank, Inc.* 2006 WL 240535, at *3 (S.D. Ill. Jan. 13, 2006) (Herndon, J) (denying motion to remand when plaintiffs alleged that defendants' fees were improper because they bore "no relation to [underlying] costs" and were in excess "of the amount required to cover [] actual costs."). On the other hand if, as Plaintiff urges, these claims are not challenges to the rate or amount of interest itself, but rather the practices and methods used to entice, deceive, or dupe cardholders into accruing interest, then federal law is not implicated and the case should be remanded to state court. *See e.g. Hunter v. Beneficial National Bank U.S.A* , 947 F.Supp.446 (M.D. Ala. 1996) (*Hunter*) (plaintiff's state law claims for fraud did not fall within §§ 85 and 86 of the NBA); *Saxton v. Capital One Bank*, 392 F.Supp.2d 772, 783 (S.D. Miss. 2005) ("With regard to 'interest,' plaintiffs do not challenge the legality of the rate of interest charged by defendants. Rather, they claim that various interest fees were not disclosed, were unwarranted, were based on charges that were themselves improper, and in sum should never have been charged at all.");[1] *Young v. Wells Fargo & Co*. 671 F.Supp.2d 1006, 1021 ("the basis of the

---

[1] In *Saxton*, the NBA was not directly applicable and the defendants argued that the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDA) served to preempt plaintiffs claims. *See generally, id.* The Court acknowledged, however, that the relevant section of DIDA was patterned after §§ 85 and 86 of the NBA. *Id.* at 781. While the Court did express (continued...)

alleged excessiveness [in fees] is that Wells Fargo charged fees when they should not, a wholly different claim from a claim that Wells Fargo applied an illegal interest rate. As such, Plaintiffs' claims are not usury claims are not subject to complete preemption by § 86 of the NBA."); *Patterson v. Regions Bank*, 2006 WL 340 7852 (S.D. Ill. Nov. 27, 2006) (Herndon, J.) (distinguishing *Forness,* cited *supra*, because "Plaintiffs do not appear to be alleging that the challenged interest rate is illegal – but merely appear to allege that Defendant is not charging the rate it said it would charge on the Note.")

Count III of Plaintiff's Complaint is clearly not challenging the amount of interest or fees, but rather the imposition of over-the-limit fees in certain, specifically defined, circumstances. This count incorporates by reference paragraphs 32 through 36 which describe certain practices which result in consumer incurring over-the-limit fees: a) imposing a late fee which causes the consumer to exceed the credit limit; b) imposing a monthly finance charge which causes the consumer to exceed the credit limit; c) soliciting for Capital One goods and services which causes the consumer to exceed the credit limit; d) failing to have a procedure to stop soliciting goods and services when a consumer is over the credit limit; and e) failing to have a procedure to decline purchases from other merchants when a consumer is over the credit limit. When read together with the other paragraphs included in the count, Plaintiff's complaint can only be read to challenge the enumerated practices and procedures as deceptive, fraudulent, or unconscionable under the WVCCPA – not the

---

[1](...continued)
skepticism that DIDA would completely preempt state law like the NBA as recognized in *Beneficial*, it found nonetheless that the plaintiff's claims were not properly characterized as usury claims within the relevant section of DIDA or §§ 85 and 86 of the NBA. *Id.* at 783 (quoted *supra*).

amount of the fees or interest rate. As Count III does not challenge the rate of interest it is not preempted by either § 85 or § 86 of the NBA.

Defendant's challenge to Count VII of the Complaint is based largely on paragraph 75, which is incorporated into the count by reference. This paragraph alleges, "[t]he fees Capital One billed to consumers for making late payments, making payments less than the minimum monthly payment, or going over-the-limit with the creditor's approval are unrelated to actual costs of these events and are billed as a means to increase profit." Pl.'s Compl. at ¶ 75. While this language is similar to the language Judge Herndon relied on to find the claims in *Forness* preempted, paragraph 75 must be read in context in order for it to have any meaning. The paragraphs surrounding 75 (within § G of the Complaint) describe how Defendants charged fees for multiple goods and services on low-limit credit cards and did not report these fees to the consumer until the second credit card statement was issued. Together, these paragraphs describe an alleged scheme to induce holders of low-limit credit cards into incurring over-the-limit fees. Paragraph 75 is important to describing the illegality of this scheme. By stating that the fees were "unrelated to the actual cost of these events and billed as a means to increase profit," Plaintiff is describing Defendant's intent – which may be necessary to successfully prosecute a claim of fraudulent and deceptive acts under the WVCCPA *See* W. Va. Code § 46A-7-109. In context it is clear that every paragraph within, or incorporated by reference into, Count VII is present to make a claim against deceptive and fraudulent practices – not the amount or rate of interest charged. For this reason Count VII is not preempted by the NBA.

The Court would finally note that Plaintiff's claims under W. Va. Code § 46A-7-111, the making of charged in excess of those permitted by the Act, are also not an indication that Plaintiff

seeks to challenge the rate of interest. The use of the term "excessive" in Plaintiff's Complaint is like the use of the term in *Hunter* or *Young* and simply means an illegal fee not permitted under the WVCCPA. *See Hunter*, 947 F.Supp. at 451 ("The court presumes that defendants mean 'excessive' in the sense that the rate violates Alabama law."); *Young* 671 F.Supp.2d at 1021 ("Here, it is clear that when Plaintiffs make reference to 'excessive' fees in the Complaint, they are not alleging that the rate of interest charged by Wells Fargo exceeded the interest rate established by statutory law."). Under the WVCCPA, "the attorney general may bring a civil action against a creditor for making or collecting charges in excess of those permitted by this chapter." W. Va. Code § 46A-7-111. Within the meaning of this provision an "excess" charge is any that is contrary to the WVCCPA. *See id.*; *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.* 461 S.E.2d 516 (W. Va. 1995).

## Conclusion

For the reasons explained above, the Court **GRANTS** Plaintiff's motion to remand (Doc. 18) The Court hereby **DIRECTS** the Clerk to **STRIKE** this case from the docket and **REMAND** it to the Mason County Circuit Court where it was originally filed. As a result of remand, Defendants' motions to dismiss (Doc. 8) and to transfer venue (Doc. 11) are **DENIED** as moot. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: July 22, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE